NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000642
14-JUL-2026
09:04 AM
Dkt. 58 SO

NO. CAAP-24-0000642

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

TEOFANES Q. NATAVIO, JR., Petitioner-Appellant,
v.
ADMINISTRATIVE DIRECTOR OF THE COURTS,
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DAA-24-00002)

### SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Wadsworth and Guidry, JJ.)

Petitioner-Appellant Teofanes Q. Natavio, Jr.

(**Natavio**) takes this secondary appeal from the July 31, 2024

"Decision and Order" (**D&O**), and August 2, 2024 "Judgment on

Appeal" (**Judgment**), entered by the District Court of the First

Circuit (**district court**).[1]  The D&O and Judgment affirmed the

Administrative Driver's License Revocation Office's (**ADLRO**)

March 30, 2023 Notice of Administrative Review Decision (**ADLRO**

---

[1]     The Honorable Thomas A. Haia presided.

**Decision**), which administratively revoked Natavio's driver's license for two years, and the January 12, 2024 "Findings of Fact, Conclusions of Law, and Decision," which sustained the ADLRO Decision.

Natavio raises four points of error on appeal, contending that the district court "was wrong in affirming the ADLRO's": (1) "denial of Natavio's Motion to Disqualify"; (2) "denial of Natavio's Motion to Rescind for Violation of Due Process"; (3) "conclusion that it was not collaterally estopped from finding reasonable suspicion for the stop of Natavio's vehicle"; and (4) "conclusion there was probable cause to believe that Natavio operated the vehicle while under the influence of an intoxicant."

We review secondary appeals de novo, and apply the standards set forth in Hawaii Revised Statutes (**HRS**) § 291E-40 (2020)[2] to determine whether the district court's determinations were right or wrong.  <u>Wolcott v. Admin. Dir. of the Cts.</u>, 148 Hawaiʻi 407, 413, 477 P.3d 847, 853 (2020) (cleaned up).

---

[2]    HRS § 291E-40(c) (2020) provides:

(c) The sole issues before the court shall be whether the [administrative director of the courts]:
(1) Exceeded constitutional or statutory authority;
(2) Erroneously interpreted the law;
(3) Acted in an arbitrary or capricious manner;
(4) Committed an abuse of discretion; or
(5) Made a determination that was unsupported by the evidence in the record.

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we address Natavio's points of error as follows:

(1) **Ex Parte Communication**: Natavio contends that the ADLRO erred by not rescinding his driver's license revocation, or disqualifying itself, due to its alleged improper ex parte communication with Honolulu Police Department (**HPD**) Sergeant Jared Spiker (**Sergeant Spiker**) in unrelated cases. Natavio contends that the "procedures used by the ADLRO" in communicating ex parte with Sergeant Spiker "create[] a tremendous risk of erroneous deprivation" of Natavio's due process right to keep his driver's license, and ADLRO's failure to inform Natavio of the substance of the alleged ex parte communications denied Natavio an opportunity to be heard.

"A driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license." Kernan v. Tanaka, 75 Haw. 1, 21, 856 P.2d 1207, 1218 (1993) (citation omitted). As such, Natavio had a due process right "to be heard at a meaningful time and in a meaningful manner." Id. at 22, 856 P.2d at 1218 (citations omitted). Determining the appropriate process due in a given situation:

> [R]equires consideration of three distinct factors: [1] the **private interest** that will be affected by the official

> action; [2] the **risk of an erroneous deprivation of such interest through the procedures used,** and the probable value, if any, of additional or substitute procedural safeguards; and [3] the **government's interest, including the function involved and the fiscal or administrative burdens that the additional procedures would entail.**

Id. at 22-23, 856 P.2d at 1218-19 (emphasis added) (citations omitted).

Here, Natavio points to no evidence in the record that the ADLRO engaged in any ex parte communications with Sergeant Spiker about Natavio or his case. And Natavio cites no authority to support the proposition that ex parte communications in *separate and unrelated* revocation proceedings create a blanket appearance of impropriety, such that the ADLRO's disqualification is necessary to protect Natavio's due process rights. Natavio's contention therefore lacks merit.

(2) **Expeditious Hearing**: Natavio contends that he was denied his due process right to an expeditious hearing because the HPD did not fully comply with the subpoena duces tecum requesting Sergeant Spiker's personnel records. Specifically, Natavio claims that HPD refused to produce an alleged 874-page Professional Standards Office (**PSO**) investigation document relating to Sergeant Spiker, and that HPD's refusal caused him to have "to choose between having a full and fair hearing and an expeditious one."

HRS § 291E-38 (2020) "mandates that absent a continuance for good cause shown, an administrative hearing to

4

review the revocation of a driver's license must be commenced within twenty-five days from the date the notice of administrative revocation was issued."  Robinson v. Admin. Dir. of the Cts., 93 Hawai‘i 337, 341, 3 P.3d 503, 507 (App. 2000) (cleaned up).  The record reflects that all continuances in this matter were granted at Natavio's request.  Natavio "cannot by his own voluntary conduct invite error and then seek to profit thereby."  State v. Jones, No. 29301, 2010 WL 3133549, at *6 (Haw. App. Aug. 5, 2010) (mem. op.) (citations omitted).

Moreover, the record reflects that the ADLRO granted Natavio a subpoena duces tecum for Sergeant Spiker's records after Natavio filed a written request for the "Disciplinary Records regarding Sergeant [] Spiker" including "Form HPD-384 for Sergeant [] Spiker's 2021 PSO investigation."  The documents produced by HPD appear to be responsive to Natavio's request, and Natavio does not contend otherwise.

Natavio argues that the HPD documents were incomplete, as they did not include the "HPD-384" form and the results of a "21-0649" PSO investigation against Sergeant Spiker.[3]  Natavio represented below that he would submit

---

[3]     HPD produced 127 pages of responsive documents.  The cover page of the subpoenaed documents includes a letter from HPD Major Brandon Nakasato representing, inter alia, that "findings related to untruthfulness and veracity for HPD Sergeant [] Spiker do not exist.  Additionally, HPD Sergeant [] Spiker did not and has never received an 'HPD-384' for a 2021 PSO Investigation for untruthfulness and veracity."

transcripts establishing the existence of additional responsive documents not provided by the HPD, but Natavio never submitted this additional offer of proof.  On this record, we conclude that the ADLRO had no basis to determine that the documents produced by HPD were incomplete, false, or not responsive.

(3) **Reasonable Suspicion**: Natavio contends that the ADLRO erred in determining that the district court's decision in a related case, case no. 1DTI-23-053329[4] (**Traffic Case**), did not collaterally estop the ADLRO from finding reasonable suspicion in this case.  In the Traffic Case, Natavio was charged with disregarding a red traffic signal, the act which precipitated Natavio's arrest for Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**).  The Traffic Case was subsequently dismissed with prejudice.  Natavio contends that "[t]he issue decided [in the Traffic Case] is identical to the issue presented at the ADLRO hearing."

An administrative revocation shall be affirmed only if, inter alia, there existed reasonable suspicion to stop the vehicle.  HRS § 291E-38(f)(1) (Supp. 2026).[5]  Collateral estoppel bars relitigation of an issue when the following factors are

---

[4]      The Honorable Timothy E. Ho presided.

[5]      The Supplemental Volume of the HRS for 2026 has not yet been issued.  The portion of HRS § 291E-38 which refers to the ADLRO's requirement to affirm the existence of reasonable suspicion was amended as subsection (f) by H.B. 2097, H.D. 1, S.D. 1, 33rd Leg., Reg. Sess. (2026).  Therefore, the forthcoming 2026 Supplemental Volume is cited.

satisfied: (1) the issue decided in the prior suit is identical to the issue presented in the action in question; (2) there was a final judgment on the merits in the prior suit; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior suit; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment. Smallwood v. City & Cnty. of Honolulu, 118 Hawaiʻi 139, 147, 185 P.3d 887, 895 (App. 2008) (citations omitted); Tradewind Ins. Co. v. Stout, 85 Hawaiʻi 177, 184, 938 P.2d 1196, 1203 (App. 1997) (citations omitted).

The district court's dismissal of the Traffic Case, standing alone, does not compel our conclusion that the traffic stop was not supported by reasonable suspicion. Natavio introduced the district court's judgment that dismissed the Traffic Case with prejudice to support his collateral estoppel argument. However, the Traffic Case judgment did not include an affirmative finding that Officer Alvin Koike (**Officer Koike**), the officer making the traffic stop, was not credible, nor that the traffic stop was not supported by reasonable suspicion. "To determine whether the officer indeed had specific and articulable facts to justify the investigative stop, we examine the totality of the circumstances measured by an objective

standard." State v. Prendergast, 103 Hawai‘i 451, 454, 83 P.3d 714, 717 (2004).

Here, Officer Koike's sworn statement in the arrest report states that he observed Natavio's vehicle "approach[] the traffic signal, which was red, and turn[] without coming to a complete stop." Officer Koike's report pointed to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted a stop for a suspected traffic infraction. ADLRO was not collaterally estopped from making its own assessment of reasonable suspicion for the traffic stop.

(4) **Probable Cause**: Natavio contends that the ADLRO erred in finding probable cause that Natavio committed OVUII. "Probable cause is established by a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of guilt of the accused." State v. Ontai, 84 Hawai‘i 56, 63, 929 P.2d 69, 76 (1996) (cleaned up). Probable cause requires more than a mere suspicion, but less than a certainty. State v. Maganis, 109 Hawai‘i 84, 86, 123 P.3d 679, 681 (2005) (citations omitted).

Natavio disputes Sergeant Spiker's observation of his poor performance on the standardized field sobriety test (**SFST**), and contends that he was unable to dispute Sergeant Spiker's credibility because he could not obtain impeachment materials.

In section (2), supra, we concluded that the ADLRO did not deny Natavio's due process right to conduct discovery of Sergeant Spiker's HPD records. We therefore reject Natavio's contention that "he was not allowed to adequately challenge Sergeant Spiker's credibility."

Sergeant Spiker testified that, during the SFST, Natavio could not keep his balance, stepped on his own feet, swayed during the one-leg stand test, and admitted to having "three drinks." In the arrest report, which was introduced into evidence, Sergeant Spiker also observed that Natavio had a strong odor of intoxicants, and red, watery, and glassy eyes.

The arrest report also included sworn statements from Officer Koike and Officer Cheeravath Aphipunyo (**Officer Aphipunyo**), which corroborate Sergeant Spiker's observations of Natavio's intoxication. Officer Koike's observed that,

> After initiating the traffic stop, [Officer Koike] approached the driver's window to speak with [Natavio] and could smell **a strong odor** of an alcoholic type beverage coming **from [Natavio's] breath as he spoke**, and saw [Natavio's] eyes to be watery and glassy. [Officer Koike] confirmed that this odor of an alcoholic type beverage did indeed come from [Natavio] when [Officer Koike] spoke with [Natavio] alone. **[Natavio's] speech was slurred** as well.

(Emphasis added.) Officer Aphipunyo represented that he arrived a few minutes after the traffic stop, Officer Spiker was at the scene, and "[u]pon [Officer Aphipunyo's] initial encounter with [Natavio], [Officer Aphipunyo] immediately detected a strong

odor of alcohol on [Natavio's] breath.  [Natavio's] eyes were red, watery, and glassy."

Officer Koike and Officer Aphipunyo's independent observations of Natavio's red, watery, and glassy eyes, his slurred words, and a strong odor of alcohol on his breath, support the ADLRO's determination of probable cause for OVUII. See State v. Wilson, 92 Hawai'i 45, 54 n.14, 987 P.2d 268, 277 n.14 (1999) ("[T]here is nothing to prevent the prosecution from relying on other relevant evidence of intoxication . . . e.g., the manner in which [driver] was observed to have driven his vehicle, his conduct in performing the requisite alcohol tests, his appearance, demeanor, and other valid police observations of signs of intoxication."); see also Bicalho v. Admin. Dir. of the Cts., No. CAAP-24-0000054, 2026 WL 1033119, at *2-3 (Haw. App. Apr. 16, 2026) (SDO).

For the foregoing reasons, we affirm the district court's D&O and Judgment.

DATED: Honolulu, Hawai'i, July 14, 2026.

On the briefs:

Alen M.K. Kaneshiro,
Christopher M. Phillips,
for Petitioner-Appellant.

Alyssa-Marie Y. Kau,
Deputy Attorney General,
for Respondent-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge